UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LONG PAINTING COMPANY, a Washington corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>GENERAL ELECTRIC COMPANY, a New York corporation; ALSTOM RENEWABLE US LLC, a Delaware corporation,<br><br>       Defendants | Case No. 1:17-cv-9975 |

## COMPLAINT

COMES NOW the Plaintiff, Long Painting Company, by and through their attorneys of record, Oles Morrison Rinker & Baker LLP, and for its Complaint against Defendant General Electric Company, states and alleges as follows.

### I. PARTIES

1. Plaintiff Long Painting Company ("Plaintiff" or "Long") is a corporation organized under the laws of the state of Washington with its principal place of business in Kent, Washington. At all relevant times, Long Painting has been duly licensed and all other prerequisites to bring suit have been maintained.

2. On information and belief, Defendant General Electric Company ("Defendant" or "GE") is a corporation formed under the laws of New York with its principal place of business in located at 3135 Easton Turnpike, Fairfield, Connecticut.

3. On information and belief, Defendant Alstom Renewable US LLC ("Defendant" or "Alstom" is a limited liability company formed under the laws of Delaware with its principal place of business located at 8000 E Maplewood Ave, Suite 105, Greenwood Village, CO 80111.

## II.    JURISDICTION & VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1), (c)(2), and (d) because Defendant is subject to the Court's personal jurisdiction.

## III. FACTS

6. At all times relevant hereto, Alstom Power Inc. ("Alstom") contracted with Grant County Public Utility Department ("Grant County PUD") for the Priest Rapids Generator Rehabilitation Project, contract no. 230-3737. Alstom and Grant County PUD entered into a construction contract for $87,775,000.00 in exchange for Alstom's performance under the contract to perform various upgrades to the turbine-generators at the Priest Rapids Dam.

7. Subsequent to the award of the Priest Rapids Generator Rehabilitation Project to Alstom, Alstom was acquired by GE. Work performed under the Grant County PUD contract was performed collectively by Alstom/GE, with both company addresses, and entity names being used. (Collectively referred to as "Alstom/GE" herein.)

8. On August 29, 2016, Alstom/GE's Regional Commodity Buyer Stephane Baril solicited Long to perform various cleaning and painting activities as part of the Priest Rapids Generator Rehabilitation Project (the "Project".) Alstom/GE requested Long's time and material rates for performing stator core frame cleaning, spider cleaning stator core, rotor rim cleaning

with walnut blasting, and rotor spider cleaning with walnut blasting on the Priest Rapids Generator Rehabilitation Project.

9. Long performed work nearly identical in nature to the scope of work outlined in Alstom/GE's solicitation under a similar time and material arrangement for Grant County PUD at the Rocky Beach Dam project during June 2016. On that project, Long cleaned the stator core by the same means and methods (walnut blasting) with success.

10. On August 30, 2016, Long responded to Alstom/GE's solicitation with a detailed time and material quote. Long's quote contained a scope description of "Cleaning of stator core with walnut shells, spider cleaning stator frame, rotor rim cleaning, rotor spider cleaning – Unit #1."

11. Alstom/GE accepted Long's labor and materials quote. On September 8, 2016, Alstom/GE transmitted Purchase Order no. 4101248204[1] along with the GE Power Terms of Purchase and the Priest Rapids Flow Down Provisions.

12. On September 15, 2016, Alstom/GE transmitted a new version of the Purchase Order – known as "Change to Purchase Order 4101248204 /3" with a version date of "15.09.2016," with a note that the price was "per quote: September 7th, 2016".

13. Pursuant to the terms of the Purchase Order, Alstom/GE was required to pay Long's time and material rates in exchange for Long's performance of the contracted for scope of work.

14. On August 30, 2016, Alstom/GE also allegedly provided Long with a link to a copy of the Project specifications via a file transfer. Long was unable to open the link to the Project specifications. On the same day, Long contacted Alstom/GE inquiring as to whether

---

[1] (The purchase order numbers were updated by Alstom/GE in January 2017.)

there was an action item related to the link, but no reference to a specification was given in any further written, in-person verbal or phone communication.  The link expired on September 6, 2016 and Alstom/GE never responded to Long or provided Long with a working link to the Project specifications until November 2017, after the dispute arose between the parties

15. During October 2017, Alstom/GE provided all direction in the field as to how work was to be performed, as well as the tools needed to perform the grinding work.

16. An onsite preliminary kick off meeting was held with representatives of Grant County PUD, Alstom/GE, and Long on November 9, 2016, at which time the stator core cleaning process was reviewed. At the time of review, no technical issues were discovered with the cleaning methods to be performed by Long on the stator core.

17. On November 10, 2016, a follow up meeting with Alstom/GE site leaders and Long production leaders as held to discuss stator core cleaning and blasting expectations. It was discussed that Alstom/GE expected 100% paint removal. In the absence of a specification, this served as Long's direction for this work. Stator core protection concerns were not raised by Alstom/GE.

18. Long performed stator core cleaning pursuant to Alstom/GE's direction from November 17, 2016 through December 6, 2016. Long performed its scope of work under the daily direction and supervision of Alstom/GE personnel. During the project, Alstom/GE personnel performed daily inspections of Long's work and provided field orders to adjust the work as Alstom/GE deemed necessary during the process.  At Alstom/GE's suggestion, Long also attended the Project weekly coordination meeting

19. Alstom/GE controlled the means, methods, and the process throughout the duration of the work.

20.     On December 7, 2016, Alstom/GE performed final inspection and reported completion of Long's work on the stator frame blasting. Alstom/GE detected no defects with the quality of Long's performance and all of Long's work passed final inspection.

21.     While Long completed the work, it contemporaneously compiled its time and material invoices and submitted the invoices to Alstom/GE on a bi-weekly basis. Long submitted seven (7) time and material invoices totaling $305,222.26 to Alstom/GE during the course of Long's work.

22.     Long began to regularly follow up on the status of these invoices via email and telephone call beginning in November 2016, when the invoices began to approach a "net 60" status.  Long's first invoice became past due on November 29, 2016. During the months of December 2016 and January 2017 Long notified Alstom/GE of the invoice being past due and continued to have conversations related to payment, in which Alstom/GE indicated payment was coming and Long "should receive it soon" – but that there were issues with Alstom/GE payment processes and "queues" holding up the issuance of the payment.

23.     During this time, although Long's work on the stator core cleaning was complete, Alstom/GE made no mention of any issue relating to Long's performance of the work.

24.     Alstom/GE representatives signed off on Long invoices, stamping them as "approved" and witnessing that approval with handwritten notations.

25.     On January 26, 2017, nearly 2 months after the stator core cleaning work was completed, Alstom/GE approved in writing Long's time and material invoices during the Project without citing any errors in Long's performance of the work. Despite Alstom/GE "approving them", Alstom/GE did not issue payment for those approved invoices.  This results in an approved but unpaid amount of $305,222.26.

26. During December 2016 and January 2017, Long followed up on payment status of its invoices in writing and via telephone call.

27. On February 7, 2017, two months after completion and final approval of Long's work on the stator core, (and the day after Alstom/GE indicated that they were looking into when payment would be issued) Alstom/GE issued a non-conformity report to Long alleging equipment damage from walnut shells wedged in the laminations in various areas throughout the stator core. Alstom/GE refused to pay Long as required by the Purchase Order and further held Long responsible for the costs and delays associated with this newly alleged issue.

28. During this same timeframe, on January 8, 2017, Alstom/GE sought Long's assistance in cleaning and blasting the rotor rim, as well as a quote from Long for blasting and paint removal of the rotor spider, and on February 7, 2017, Alstom/GE sought firm price quote for lead paint removal of the rotor spider and rotor rim cleaning at Unit 1, as well as stator core cleaning, lead paint removal, rotor rim cleaning, and paint removal at units 2-8.

29. At the time of this Complaint, the principal balance past due and owing to Long is $305,222.26, plus interest.

### IV. COUNT ONE: BREACH OF CONTRACT AGAINST ALSTOM/GE

30. Long incorporates the allegations in paragraphs 1-29 above, as though fully set forth herein.

31. Long and Defendant GE entered into a written Purchase Order, wherein Long agreed to perform certain specified work in exchange for payment for the same.

32. GE administered the Purchase Order through various personnel and processes operating under the Alstom company profile.

33.     Long performed the contracted for scope of work, but Defendants Alstom/GE have yet to pay Long for its work.

34.     As a result of Defendant GE's breach of the Purchase Order, Long has been damaged in an amount to be proved at trial, but in no event less than $305,222.26, plus interest.

## V.     COUNT TWO: QUANTUM MERUIT/UNJUST ENRICHMENT

35.     Long incorporates the allegations in paragraphs 1-34 above, as though fully set forth herein.

36.     Long performed work on the Project at the request and direction of Alstom/GE.

37.     Alstom/GE knew, or should have known, that Long expected to be paid for its work performed on the Project.

38.     Alstom/GE knowingly received the benefit of Long's work on the Project without making payment to Long for the full value of Long's work.

39.     The actions, conduct and failure of Alstom/GE to pay Long for its work, services, labor and materials has unjustly enriched Alstom/GE and/or otherwise provided a benefit to Alstom/GE for which Long is entitled to be paid.  Long is entitled to recover in *quantum meruit* for the reasonable value of its work, services, labor and materials in an amount to be proven at time of trial for all its work, labor, services and materials provided to Alstom/GE on the Project.

40.     Long is entitled to a judgment against Alstom/GE for reasonable value of the benefit conferred upon Alstom/GE from the work performed by Long on the Project, with interest.

## VI.     COUNT THREE: ESTOPPEL/WAIVER

41.     Long incorporates the allegations in paragraphs 1-40 above, as though fully set forth herein.

42. Alstom/GE directed Long to perform certain work and directed the means and methods for the performance of that work. Alstom/GE promised that it would pay Long for the work, including signing off on invoices as approved, indicating payment was forthcoming and signing off on the work in the field.

43. Alstom/GE approved, signed off and accepted the work in question.

44. Long performed its work and took on additional work in reliance on Alstom/GE's promise.

45. By its conduct, Alstom/GE is estopped from asserting any backcharges against Long for the work it directed, approved and accepted.

46. As a direct and proximate resolute of Alstom/GE's promises to pay for work done at its direction and acceptance, Long as sustained damages in an amount to be proven at trial, plus interest.

### VII. COUNT FOUR: BREACH OF GOOD FAITH AND FAIR DEALING

47. Long incorporates the allegations in paragraphs 1-46 above, as though fully set forth herein.

48. A duty of good faith and fair dealing is implied in every contract. This duty requires parties to cooperate with each other so that each may obtain the full benefit of performance.

49. Alstom/GE has not performed its obligations under the Purchase Order with Long in good faith, when Alstom/GE submitted requests for compensation to Grant County PUD and has not paid Long for its work, directed Long to perform work while failing to pay for that work, repeatedly approving invoices and promising that payment was forthcoming, and then withholding final payment for Long's work.

50. As a direct and proximate result of Alstom/GE's failure to perform its contract with Long in good faith, Long has sustained damages in an amount to be proven at trial plus interest.

## VIII. <u>COUNT FIVE: PROMPT PAYMENT ACT VIOLATION</u>

51. Long incorporates the allegations in paragraphs 1-50 above, as though fully set forth herein.

52. RCW 39.04.250(1) requires a contractor on a public works project to make payment to any subcontractor not later than ten (10) days after receipt of the payment from the public agency.

53. RCW 39.04.250(2) permits a contractor to withhold payment of no more than one hundred fifty percent of the disputed amount only if there is a "good faith dispute" over all or any portion of the amount due on a payment from the public agency on the public works project.

54. Pursuant to RCW 39.04.250(3), any person from whom funds have been withheld in violation of the statute is entitled to receive interest at the highest rate allowed under RCW 19.52.025. The prevailing party in any action for the collection of funds wrongfully withheld is entitled to recover the costs of suit and reasonable attorneys' fees.

55. RCW 39.76.011(e)(1) requires a contractor withholding payment on a public works project to notify a subcontractor "of the remedial actions that must be taken as soon as practicable after determining the cause for [any] withholding" of funds by the public agency. Pursuant to RCW 39.76.011(e)(i)(A), such notice must occur "before the due date of subcontractor payment."

56. Pursuant to RCW 39.76.011(e)(ii), a contractor that does not comply with the aforementioned notice requirements "shall pay the subcontractor interest on the withheld amount from the eighth working day at an interest rate that is equal to" one percent per month.

57. Pursuant to RCW 39.76.040, the prevailing party in any action brought to collect interest due under the statute is entitled to an award of reasonable attorneys' fees.

58. Upon information and belief and subject to further discovery, Defendants Alstom/GE were paid by Grant County PUD for Long's work on the subject Project. However, Alstom/GE failed and refused to pay Long for its work, thereby violating Washington law.

59. Upon information and belief and subject to further discovery, Alstom/GE failed to provide timely notice of its reasons for withholding payment from Long, thereby violating Washington law.

60. Alstom/GE violated the Washington Prompt Payment Act and is liable to Long in an amount to be proven at trial, but in no event less than $305,222.26, plus interest, costs and attorneys' fees pursuant to RCW 39.04.250 and RCW 39.76 et seq.

## IX.  PRAYER FOR RELIEF

Long Painting Company prays for relief as follows:

1. For its first cause of action, for judgment in favor of Long and against Defendants Alstom/GE on the basis that Defendants Alstom/GE materially breached the parties Purchase Order in an amount to be proven at trial, but in no event less than $305,222.26, plus interest.

2. For its second cause of action, judgment in favor of Long, and against Defendants Alstom/GE for the reasonable value of Long's work performed on the Project in the principal amount to be determined at trial, but in no event, less than $305,222.26, plus interest.

3. For its third cause of action, that Alstom/GE be estopped from asserting any defects in performance because it directed, approved and accepted Long's work during and after performance.

4. For its fourth cause of action, judgment in favor of Long, and against Defendants Alstom/GE for the reasonable value of Long's work performed on the Project in the principal amount to be determined at trial, but in no event, less than $305,222.26, plus interest.

5. For its fifth cause of action, judgment against Alstom/GE for violation of the Prompt Payment Act, in an amount to be proven at trial, but in no event, less than $305,222.26, plus all contract and/or statutory interest, attorneys' fees and costs.

6. For an award to Long for any reasonable attorneys' fees, costs, expenses and interest as allowed by the Purchase Order, law and/or equity;

7. For leave of Court to amend or supplement this Complaint for new causes of action based on facts that may arise in discovery, or for such other proof as may arise; and

8. For any such other and further relief as the Court deems just and equitable.

## VI.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED this 20TH day of December 2017.

_____
Authorized Representative for Plaintiff

DATED this 21st day of December 2017.

By: /s/ Meghan A. Douris
Meghan A. Douris [No. MD0622]
OLES MORRISON RINKER & BAKER LLP
701 Pike Street, Suite 1700
Seattle, Washington 98101-3930
Phone: (206) 623-3427

Attorneys for *Plaintiff*

4814-7740-9623, v. 5