```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
------------------------------------------- X   ELECTRONICALLY FILED
                                            :   DOC #: _____
LONG PAINTING COMPANY,                      :   DATE FILED: July 9, 2018
                                            :
                             Plaintiff,     :
         -v-                                :
                                            :        17-cv-9975 (KBF)
GENERAL ELECTRIC COMPANY and                :
ALSTOM RENEWABLE US LLC,                    :        OPINION & ORDER
                                            :
                             Defendants.    :
------------------------------------------- X
```

KATHERINE B. FORREST, District Judge:

This is an action to recover invoice charges for work done by Long Painting Company ("Long") pursuant to a contract with defendants General Electric Company ("GE") and Alstom Renewable US LLC ("Alstom") (collectively, "defendants"). (ECF No. 1 ("Compl.").) Defendants deny that they owe payment and assert counterclaims against Long on several grounds, one of which alleges that Long breached the contract by failing to procure insurance as required (the "Counterclaim"). (ECF No. 21 ("Answer") ¶ 99.)

Pending now before the Court is Long's motion for partial summary judgment as to whether, as a matter of law, Long did procure insurance and provide proof of such insurance to defendants (and, accordingly, whether the Counterclaim must be dismissed). (ECF No. 32.) The Court finds that Long did comply with its contractual obligation to obtain insurance and provide proof of insurance to defendants. Accordingly, the motion is GRANTED.

I.  BACKGROUND

On August 29, 2016, defendants' representative sent one of Long's Project Managers a solicitation for a quote to perform cleaning and painting services on the Priest Rapids Dam (the "Project"). (ECF No. 34, Decl. of Charles Pham in Supp. of Pl.'s Mot. in Supp. of its Mot. for Partial Summ. J. Pursuant to F.R.C.P. 56 ("Pham Decl.") ¶¶ 2-4.) Defendants accepted Long's quote for labor and materials and transmitted a purchase order, along with GE's Power Terms of Purchase and the Priest Rapids Flow Down Provisions, on September 8, 2016. (Id. ¶ 5.) A modified purchase order was transmitted on September 15, 2016. (Id. ¶ 6.) Both purchase orders contained identical eight-page attachments entitled "GE Power Terms of Purchase Rev. A. – U.S." (the "Terms of Purchase") and dated October 1, 2015, as well as identical documents entitled "Attachment No. 1 Subcontractor Flow Downs Provisions Priest Rapids Generator Rehabilitation Contract No. 230-3737" and dated January 14, 2016. (Id. ¶¶ 7-8.)

The Terms of Purchase contain a section that states:

> The terms set forth in this Order take precedence over any additional or different terms in any other document connected with this transaction unless such additional or different terms are: (a) part of a written agreement ("Agreement"), which has been negotiated between the parties and which the parties have expressly agreed may override these terms in the event of a conflict; or (b) set forth on the PO to which these terms are attached.

(Pham Decl. Ex. 1 at 11.) The Terms of Purchase also contain sections relating to indemnity and insurance. Section 12.1., the indemnity provision, requires Long to "defend, indemnify, release and hold Buyer [GE] and its Affiliates [Alstom]

2

harmless from and against any and all claims . . . arising from any act or omission of Supplier." (Id. at 14.) Section 12.2,[1] the insurance provision, requires that Long maintains:

---

[1] The full text of Section 12.2 is as follows:
> For the duration of this Order and for a period of six (6) years from the date of delivery of the goods or performance of the services, Supplier shall maintain, through insurers with a minimum A.M. Best rating of A- VII or S&P A or the equivalent in those jurisdictions that do not recognize such rating classification and licensed in the jurisdiction where goods are sold and/or where services are performed, the following insurance: (a) Commercial General/Public Liability, on an occurrence form, in the minimum amount of USD $5,000,000.00 per occurrence with coverage for: (i) bodily injury/property damage; (ii) personal/advertising injury; and (iii) products/completed operations liability, including coverage for contractual liability insuring the liabilities assumed in this Order, with all such coverages in this Section 12.2(a) applying on a primary basis, providing for cross liability, not being subject to any self-insured retention and being endorsed to name General Electric Company, its Affiliates (defined in Section 2.2(d)), directors, officers, agents and employees as additional insureds; (b) Business Automobile Liability Insurance covering all owned, hired and non-owned vehicles used in the performance of this Order in the amount of USD $2,000,000.00 combined single limit each occurrence; (c) Employers' Liability in the amount of USD $2,000,000.00 each accident, injury or disease; (d) Property Insurance of an "All-risk" basis covering the full replacement cost value of all of the Buyer's Property in Supplier's care, custody or control, with such policy being endorsed to name Buyer as "Loss Payee" as its interests may appear; and € [sic] appropriate Workers' Compensation Insurance protecting Supplier from all claims under any applicable Workers' Compensation or Occupational Disease Act. Supplier shall obtain coverage similar to Workers' Compensation and Employers' Liability for each Supplier employee performing work under this Order outside of the U.S. To the extent that this Order is for professional services, Supplier shall maintain Professional/ Errors and Omission Liability insurance in the minimum amount of $5,000,000.00 per claim. If any insurance is on a claims-made basis, the retro date must precede the date of issuance of this Order and Supplier must maintain continuity of coverage for three (3) years following termination, expiration and/or completion of this Order. Insurance specified in sub-sections 12.2(c), (d) and (e) shall be endorsed to provide a waiver of subrogation in favor of Buyer, its Affiliates (defined in section 2.2(d)) and its and their respective employees for all losses and damages covered by the insurances required in such subsections. The application and payment of any self-insured retention or deductible on any policy carried by Supplier shall be the sole responsibility of Supplier. Should Buyer be called upon to satisfy any self-insured retention or deductible under Supplier indemnification or reimbursement from Supplier where allowed by Law. Upon request by Buyer, Supplier shall provide Buyer with a certificate(s) of insurance evidencing that the required minimum insurance is in effect. The certificate(s) of insurance shall reference that the required coverage extensions are included on the required policies. Upon request by Buyer, copies of endorsements evidencing the required additional insured status, waiver of subrogation provision and/or loss payee status shall be attached to the certificate(s) of insurance. Acceptance of such certificate(s), which are

(1) Commercial general/public liability insurance on an occurrence form in the minimum amount of $5,000,000 per occurrence (with coverage for bodily injury/property damage, personal/advertising injury, and products/completed operations liability);

(2) Business automobile liability insurance in the amount of $2,000,000 per occurrence;

(3) Employers' liability in the amount of $2,000,000 per accident;

(4) Property insurance of an "all-risk" basis covering the full replacement cost value of all the GE's property in Long's care, custody, or control;

(5) Appropriate workers' compensation insurance; and

(6) Professional/errors and omission liability insurance in the minimum amount of $5,000,000 per claim.

(Pham Decl. Ex. 1 at 15-16.) Crucially, the Terms of Purchase allow additional insurance policies (e.g., an excess/umbrella liability insurance policy) to be utilized to meet the coverage requirements (of $2,000,000 to $5,000,000) outlined in the first three sections listed above. (Id. at 15; Bucklin Decl. Ex. 3.)

Long procured insurance from Arch Insurance Company ("Arch") that provides commercial general liability coverage and products/completed operations liability coverage to all parties where required by a written contract as additional

---

not compliant with the stipulated coverages, shall in no way whatsoever imply that Buyer has waived its insurance requirements or any other obligations set forth herein. The above-referenced insurance limits in subsections (a), (b) and (c) can be met either via each policy or via a combination of these policies and an excess/umbrella liability insurance policy.
(Pham Decl. Ex. 1 at 15.)

insureds (the "Policy").  (ECF No. 33, Decl. of Denica Bucklin in Supp. of Pl.'s Mot. in Supp. of its Mot. for Partial Summ. J. Pursuant to F.R.C.P. 56 ("Bucklin Decl.") Ex. 1 at 133; see also Bucklin Decl. Ex. 2 at 2, 4, 6 (certificate dated February 18, 2016); Bucklin Decl. Exs. 3-4 (certificates dated December 31, 2016 naming Alstom, Grant County PUD, and "all parties where required by a written contract" as additional insureds); Bucklin Decl. Ex. 5 (certificate dated December 31, 2017 naming Alstom and "all parties where required by a written contract" as additional insureds).)  The Policy also contains an endorsement providing commercial general liability coverage to "any state or political subdivision requiring that they be named as an additional insured on your policy solely because it has issued a permit with respect to operations performed by you or on your behalf," which includes Grant County PUD.  (Bucklin Decl. Ex. 1 at 72.)  The policy also contains a "Designated Construction Projects General Aggregate Limit" endorsement that provides commercial general liability coverage to "all construction projects of the insured unless otherwise excluded," which includes the Project.  (Id. at 119.)

The commercial general/public liability coverage limits in the policy are as follows:

| Item 2. Limits of Insurance | | |
|---|---|---|
| Coverage | | Limit of Liability |
| Aggregate Limits of Liability | $ 2,000,000 | Products/Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ 100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ 5,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

(Bucklin Decl. Ex. 1 at 21.)

Long's insurance broker, Propel Insurance ("Propel"), sent a copy of each certificate of insurance to defendants at the address at the bottom of each form, and it emailed a copy to Wendy Allan, an Alstom representative. (Bucklin Decl. ¶ 9; see also Bucklin Decl. Ex. 6.) Long is required to ensure that defendants receive a copy of the certificates; the Terms of Purchase note that acceptance of certificates by defendants of a non-compliant policy does not imply that defendants waived any requirements. (Pham Decl. Ex. 1 at 16.)

II. LEGAL PRINCIPLES

    A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

In making a determination on summary judgment, a court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

    B. <u>Breach of Contract</u>

To succeed on a claim for breach of contract, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). "Summary judgment is generally proper in a contract dispute only if the language of the

7

contract is wholly unambiguous." Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 157 (2d Cir. 2000). "Ambiguity . . . is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008).

III. DISCUSSION

The parties agree that the Terms of Purchase require Long to procure insurance; they disagree over whether the Policy actually satisfies the requirements of the Terms of Purchase. Defendants argue that the Policy does not comply as to the particular types and amounts of insurance and that the Policy contains provisions that are contrary to the provisions in defendants' contract with Long.[2]

Defendants first claim that they required Long to obtain $5,000,000 in insurance coverage that provided for "cross liability," and that Long breached the contract because its policy covered only up to $2,000,000. However, the last sentence of Section 12.2 provides that the "above-referenced insurance limits . . . can be either via each policy or via a combination of these policies and an excess/umbrella insurance policy." (Pham Decl. Ex. 2 at 28.) When Long's excess

---

[2] Defendants also assert that GE has made demand on Arch for costs and expenses, as well as attorneys' fees arising from litigation related to LPC's contract work, and that Arch has claimed these items are not covered by the Policy. But defendants' reliance on Arch's refusal to pay costs and expenses to repair equipment allegedly damaged by Long is misplaced—this is not, as a matter of law, indicative of any failure by Long to procure insurance. In fact, defendants state that "GE believes that Arch has wrongfully denied GE's claims to pay for the repairs to its Customer equipment" and that Arc has not been relieved from its "responsibility under the Policy to reimburse GE for amounts paid to repair this third-party property damage." (ECF No. 40 at 12-13.) This, if anything, acknowledges that Long did, in fact, procure the insurance.

8

liability coverage is added to the various limits, the coverage limit meets its contractual requirement of $5,000,000—thus, Long did not breach for failing to obtain the minimum amount.³

Defendants also claim that Long failed to obtain "all-risk" property insurance and professional/errors and omission liability insurance, as required by the Terms of Purchase. However, none of the professional services described by the Policy were related to the Project, so Long had no obligation to procure insurance for them. (See Bucklin Decl. Ex. 1 at 49, 73, 118, 126.) Specifically, the Terms of Purchase state: "<u>To the extent that this Order is for professional services</u>, Supplier shall maintain Professional/ Errors and Omission Liability insurance in the minimum amount of $5,000,000.00 per claim." (Pham Decl. Ex. 1 at 15 (emphasis added).) There is no evidence that the Project required professional services of the type contemplated by the Terms of Purchase.

Finally, defendants argue that discovery is not complete and thus, summary judgment is inappropriate at this time. However, defendants have neither raised material disputes of fact nor pointed to specific areas that are expected to yield new factual evidence but in which discovery is ongoing. To the contrary, the various contract provisions that have been submitted to the Court are sufficient to allow a legal ruling on this motion.

---

³ The Court also notes that defendant's alleged damages are well below $2,000,000—even if Long's policies could not be aggregated to comply with the Terms of Purchase, GE would have no damages for this alleged breach.

IV. CONCLUSION

For the reasons stated above, Long's motion for partial summary judgment is hereby GRANTED. Before the Court rules on Long's motion to file an amended complaint, the parties are directed to meet and confer. **Not later than July 20, 2018**, they should inform the Court (via a joint letter filed on the docket) as to whether they would like to proceed in this District or in a district court in Washington State. The Court will entertain a motion to transfer the remainder of this matter to Washington State.

The Clerk of Court is directed to close the open motion at ECF No. 32.

SO ORDERED.

Dated:     New York, New York
            July 9, 2018

                                      KATHERINE B. FORREST
                                      United States District Judge